**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| THEINT WIN HTET, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 24-1446 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 5, 6 |
| | : | | |
| DONALD J. TRUMP, *in his official capacity* | : | | |
| *as President of the United States*, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR**

**RELIEF FROM LOCAL CIVIL RULE 7(N)**

**I.  INTRODUCTION**

In February 2021, President Joseph R. Biden issued Executive Order ("E.O.") 14014,

which declared a national emergency with respect to the military-led overthrow of the

democratically elected civilian government of Burma.  That order instructs the Treasury

Secretary to designate certain individuals responsible for undermining democratic processes,

peace, and individual rights in Burma, subjecting their assets to blocking under the International

Emergency Economic Powers Act ("IEEPA") and barring their entry to the United States under

the Immigration and Nationality Act of 1952.  E.O. 14014 additionally instructs the Treasury

Secretary to block the assets of any spouse or adult child of a person whose property is blocked

by the order.

On January 31, 2024, the Treasury Department's Office of Foreign Assets Control

("OFAC") blocked the assets of Thein Win Zaw, citing his leadership and ownership of a

company that engaged in business with Burma's military.  Plaintiff Theint Win Htet is Thein

Win Zaw's adult daughter and was thus subject to designation under E.O. 14014 as well.

Following her designation, Theint Win Htet sued federal officials and OFAC (collectively,

"Defendants"), claiming that President Biden exceeded his authority under IEEPA by including

the adult children of designated individuals within E.O. 14014.[1]  She also asserts that OFAC

violated her rights under the Fifth Amendment Due Process Clause by failing to offer her a

meaningful hearing to respond to the designation.  Defendants move to dismiss.  The Court

concludes that the President's particular determination here—that blocking the assets of

designated individuals' adult children deals with the national emergency with respect to

Burma—represents a nonjusticiable political question.  In addition, because Theint Win Htet

does not dispute that she is the adult child of a designated individual, there is no factual issue that

further process may resolve.  The Court thus grants the Government's motion to dismiss and

relieves it of its obligation to produce an administrative record under Local Civil Rule 7(n).

## II.  FACTUAL BACKGROUND

IEEPA grants the President "sweeping" and "broad[]" authority to assert control over the

assets of foreign countries and foreign nationals following the declaration of a national

emergency.  *Dames & Moore v. Regan*, 453 U.S. 654, 671, 678 (1981).  The act empowers the

President to "declare[] a national emergency with respect" to "any unusual and extraordinary

threat, which has its source in whole or substantial part outside the United States, to the national

security, foreign policy, or economy of the United States."  50 U.S.C. § 1701(a).  "[O]nce the

President has declared a national emergency, the IEEPA authorizes the blocking of property to

protect against that threat" pursuant to 50 U.S.C. § 1702.  *Islamic Am. Relief Agency v. Gonzales*,

---

[1] President Donald J. Trump and Treasury Secretary Scott Bessent are automatically
substituted into this action as defendants pursuant to Federal Rule of Civil Procedure 25(d).

477 F.3d 728, 735 (D.C. Cir. 2007). Section 1702 represents an "extensive statutory grant of power" over foreign entities' property that is subject to the jurisdiction of the United States. *Consarc Corp. v. OFAC*, 71 F.3d 909, 914 (D.C. Cir. 1995); *see also Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 159 (D.C. Cir. 2003) (commenting that an emergency declaration "clothes the President with extensive authority set out in 50 U.S.C. § 1702").

IEEPA does contain some limitations, however. It does not grant the President "the authority to regulate or prohibit" personal communications, donations intended to relieve human suffering, movement of informational materials, and transactions incident to travel or living expenses. 50 U.S.C. § 1702(b)(1)–(4). In addition, the President's § 1702 authorities "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

On February 21, 2021, President Biden issued E.O. 14014 blocking property with respect to the situation in Burma. Exec. Order No. 14014, 86 Fed. Reg. 9429 (Feb. 12, 2021). In that order, the President found that "the situation in and in relation to Burma, and in particular the February 1, 2021, coup . . . constitutes an unusual and extraordinary threat to the national security and foreign policy of the United States." *Id.* The order instructed the Treasury Secretary to block the assets of several classes of people, including any foreign person determined "to operate in the defense sector of the Burmese economy or any other sector of the Burmese economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State." *Id.* § 1(a)(i). The order additionally required the blocking of assets belonging to any foreign person determined "to be a spouse or adult child of any person whose property and interests in property are blocked pursuant to this order." *Id.* § 1(a)(v). The

President also concluded that the "entry into the United States of noncitizens determined to meet one or more of the criteria in section 1(a) of this order would be detrimental to the interests of the United States, and the entry of such persons into the United States, as immigrants or nonimmigrants, is hereby suspended." *Id.* § 3(a).

On January 31, 2024, OFAC designated Thein Win Zaw and his business entities known as the Shwe Byain Phyu Group of Companies. U.S. Dept. of the Treasury , *Treasury Sanctions Military Cronies and Companies in Burma Three Years after Military Coup* (Jan. 31, 2024), https://perma.cc/H34H-GUF7. OFAC explained that the companies "developed a historic relationship with Burma's military to import and distribute petroleum, including on behalf of" a holding company used by Burma's military. *Id.* Through these companies, Thein Win Zaw "provided fuel to Burma's navy while using his companies to import petroleum and share profits with" the holding company. *Id.* OFAC further stated that Plaintiff "Theint Win Htet" was "designated pursuant to E.O. 14014 for being a spouse or adult child of Thein Win Zaw, a person whose property and interests in property are blocked under E.O. 14014." *Id.*; *see also* Notice of OFAC Sanctions Actions, 89 Fed. Reg. 8753, 8754 (Feb. 8, 2024) (explaining that Theint Win Htet was "[d]esignated pursuant to section 1(a)(v) of E.O. 14014 for being a spouse or adult child of Thein Win Zaw, a person whose property and interests in property are blocked pursuant to this order").

On May 16, 2024, Theint Win Htet filed this lawsuit against President Biden and other officials in their official capacities, as well as OFAC. *See* Compl., ECF No. 1. She claims that the President's inclusion of adult children in E.O. 14014 was *ultra vires*, as well as contrary to law in violation of the Administrative Procedure Act ("APA"). *See id.* ¶ 45–55 (Count One and Count Two, respectively). She also contends that OFAC failed to provide her procedural

protections that afford her notice and an opportunity to respond.  *See id.* ¶¶ 56–60 (Count Three).

Theint Win Htet's complaint emphasizes that the designation prevents her from completing

studies at a university in the United States and affects her access to financial services abroad.

*See id.* ¶¶ 34–44.  On July 19, 2024, Defendants moved to dismiss and for relief from Local Civil

Rule 7(n), which generally requires the Government to file the administrative record with any

dispositive motion.  *See* Defs.' Mot. Dismiss, ECF No. 5; Defs.' Mot. for Relief from Local Civ.

R. 7(n), ECF No. 6.

### III.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action

or claim when the court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion for

dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction."  *Haase*

*v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  Federal courts are courts of limited jurisdiction,

and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian*

*Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Thus, on a Rule 12(b)(1) motion, the plaintiff "bears the

burden of establishing jurisdiction by a preponderance of the evidence."  *Bagherian v. Pompeo*,

442 F. Supp. 3d 87, 91 (D.D.C. 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561

(1992).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which

relief can be granted.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (citing Fed. R.

Civ. P. 12(b)(6)).  In considering such a motion, the complaint must be construed "liberally in

the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."

*Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI*

*Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  But a court may disregard "inferences

drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint."

*Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (cleaned up) (quoting *Kowal*, 16 F.3d at

1276).

## IV.  ANALYSIS

The Court first addresses Theint Win Htet's claims that President Biden's inclusion of

adult children in E.O. 14014 was *ultra vires* and violated the APA.  At bottom, she asserts that

blocking the property of adult children of designated individuals does not "deal with an unusual

and extraordinary threat with respect to . . . the national emergency" regarding the situation in

Burma.  50 U.S.C. § 1701(b); *see also* Pl.'s Opp'n at 10, ECF No. 11.  This represents a

quintessential political question that this Court lacks jurisdiction to address.  The Court next

considers the due process claim, determining that because Theint Win Htet does not dispute that

she is the adult daughter of Thein Win Zaw, there is no factual issue that further process might

resolve.

### A.  Political Question Doctrine

Theint Win Htet contends that the President's decision to block the property of adult

children of individuals designated under E.O. 14014 is "*ultra vires*" because it "has no

discernible connection to addressing the threat" regarding the situation in Burma and is therefore

"outside of the authorities granted by Congress to him under IEEPA."  Compl. ¶ 48.  She

additionally asserts that OFAC has violated the APA by carrying out the President's instructions

under the executive order.[2]  *Id.* ¶ 55.  Defendants argue that the President's decision to designate

---

[2] Notably, Theint Win Htet does not assert in the Complaint or subsequent filings that
Defendants unlawfully excluded her from the country under the Immigration and Nationality

adult children represents a nonjusticiable political question, and that the Court lacks jurisdiction

to review it.  *See* Defs.' Mot. Dismiss at 9–22.  In addition, Defendants argue that the President's

decision is not reviewable under the APA because it is not "final agency action."  *See* Defs.'

Mot. Dismiss at 21–22.  The Court agrees with Defendants that the particular issue Theint Win

Htet raises here represents a political question that this Court may not review.

A plaintiff generally carries a heavy burden to prevail on an *ultra vires* claim.  To do so,

"the plaintiff must establish three things: '(i) the statutory preclusion of review is implied rather

than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the

agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the

statute that is clear and mandatory.'"  *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722

(D.C. Cir. 2022) (quoting *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019)).

The D.C. Circuit has further recognized "that a claim alleging that the President acted in excess

of his statutory authority is judicially reviewable even absent an applicable statutory review

provision."  *Am. Forest Res. Council v. United States*, 77 F.4th 787, 796 (D.C. Cir. 2023); *but

see id.* at 796 n.13 ("The United States Supreme Court has not yet decided if a claim that the

President acted in excess of his statutory authority is subject to non-statutory review.").

Yet because the political question doctrine is jurisdictional, *see Al-Tamimi v. Adelson*,

916 F.3d 1, 8 (D.C. Cir. 2019), the Court must consider the justiciability of Theint Win Htet's

claims before evaluating whether the President or OFAC acted in accordance with IEEPA's

statutory requirements.  "The political question doctrine excludes from judicial review those

controversies which revolve around policy choices and value determinations constitutionally

---

Act.  *See generally* Compl.; Pl.'s Opp'n.  Any such claims would likely be subject to the
consular nonreviewability doctrine.  *See Dep't of State v. Munoz*, 602 U.S. 899, 907–08 (2024).

committed for resolution to the halls of Congress or the confines of the Executive Branch."

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).  Determining whether a

case presents a political question proceeds in three steps.  First, the Court "identif[ies] the issues

raised by the plaintiffs' complaint."  *Al-Tamimi*, 916 F.3d at 8.  The Court must consider "the

particular question posed in the specific case."  *Id.* (quoting *Jaber v. United States*, 861 F.3d 241,

245 (D.C. Cir. 2017)) (quotations omitted).  Second, the Court uses the six factors the Supreme

Court enumerated in *Baker v. Carr*, 369 U.S. 186 (1962), "to determine whether any issue

presents a political question."  *Al-Tamimi*, 916 F.3d at 8.  "[T]he Court need only conclude that

one factor is present, not all."  *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 313

(D.C. Cir. 2014).  Finally, the Court "decide[s] whether the plaintiffs' claims can be resolved

without considering any political question, to the extent one or more is presented.  Indeed, the

political question doctrine mandates dismissal only if a political question is 'inextricable from

the case.'"  *Al-Tamimi*, 916 F.3d at 8.  (quoting *Baker*, 369 U.S. at 217).  A court nonetheless

"cannot 'avoid [its] responsibility' to enforce a specific statutory right 'merely because the issues

have political implications.'"  *Id.* (quoting *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189,

196 (2012)).

The precise issue raised in Counts One and Two of the Complaint is whether the

President's decision to block the assets of adult children of designated individuals—and OFAC's

implementation of that decision—complied with 50 U.S.C. § 1701(b).  Specifically, Theint Win

Htet contends that blocking this property falls outside the statute's reach because it does not

"deal with an unusual and extraordinary threat with respect to . . . the national emergency"

regarding the situation in Burma.  50 U.S.C. § 1701(b); *see also* Compl. ¶¶ 45–55.  She alleges

that "President Biden included designation criteri[a] completely unrelated to the threat for which

the national emergency allowing him to use his powers under IEEPA was declared." *Id.* ¶ 47.

She additionally asserts that "OFAC's designation action does not address the actions of the

Burmese military including the military coup on February 1, 2021." *Id.* ¶ 54.  If Theint Win Htet

were to prevail, therefore, this Court would need to conclude that blocking the assets of adult

children of designated individuals does not address the national emergency with respect to the

coup, suppression of political expression, democratic transition, or rule of law in Burma.  *See* 86

Fed. Reg. at 9429 (Preamble to Exec. Order No. 14014).

       The *Baker* factors make clear that this is a question properly reserved for the political

branches of government.  The first factor dictates that a court must respect the separation of

powers when there exists "a textually demonstrable constitutional commitment of the issue to a

coordinate political department." *Baker*, 369 U.S. at 217.  There is "no doubt that decision-

making in the fields of foreign policy and national security is textually committed to the political

branches of government." *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005).  "Matters

relating 'to the conduct of foreign relations . . . are so exclusively entrusted to the political

branches of government as to be largely immune from judicial inquiry or interference.'" *Regan*

*v. Wald*, 468 U.S. 222, 242 (1984) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 589

(1952)).  These decisions

> are wholly confided by our Constitution to the political departments of the
> government, Executive and Legislative.  They are delicate, complex, and involve
> large elements of prophecy.  They are and should be undertaken only by those
> directly responsible to the people whose welfare they advance or imperil.  They
> are decisions of a kind for which the Judiciary has neither aptitude, facilities nor
> responsibility and have long been held to belong in the domain of political power
> not subject to judicial intrusion or inquiry.

*Bancoult v. McNamara*, 445 F.3d 427, 433 (D.C. Cir. 2006) (quoting *Chi. & S. Air Lines, Inc. v.*

*Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948)).  In sum, "courts cannot reconsider the wisdom

of discretionary foreign policy decisions." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 844 (D.C. Cir. 2010).

The issue here would require the Court to closely scrutinize and second guess the President's foreign policy decision-making. Defendants contend that the executive order's designation criteria "reflect the causes and consequences of the military coup," authorizing sanctions against those who "help prop up the regime by operating in the defense sector." Defs.' Mot. Dismiss at 19. They also assert that designation of spouses and adult children "minimize[s] the risk of asset flight, which has the potential to cripple economic sanctions programs" *Id.* at 20. Inclusion of family members "can also serve as an additional deterrent to those considering engaging in sanctionable conduct, assuming they do not wish to see their spouse or adult children on the SDN List." *Id.* at 21. In considering whether Section 1(a)(v) "deal[s] with" the "unusual and extraordinary threat" arising from the situation in Burma, 50 U.S.C. § 1701(b), the Court would need to consider the Government's foreign policy goals with respect to Burma, the nature of the emergency, the economic structure surrounding Burma's military, the effectiveness of pressuring designated individuals by also designating their family members, the ease with which a designated individual can hide assets through a family member, and the relative importance of preventing that outcome. "Viewed through these prisms, it becomes clear that [P]laintiff's claims pose precisely the types of complex policy questions that the D.C. Circuit has historically held non-justiciable under the political question doctrine." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 46 (D.D.C. 2010) (declining to decide similar questions reserved for the political branches); *see also Jaber v. United States*, 861 F.3d 241, 248 (D.C. Cir. 2017) ("[I]f the court is called upon to serve as 'a forum for reconsidering the wisdom of discretionary decisions made by the political branches in the realm of foreign policy or national security[,]' then the political question

doctrine is implicated, and the court cannot proceed." (quoting *El-Shifa*, 607 F.3d at 842)).  The

issue Theint Win Htet seeks to litigate in this case does not simply "touch[] foreign relations,"

*Baker*, 369 U.S. at 211, but rather would require the Court to step into the shoes of political

decision makers.  This it cannot do.

Theint Win Htet contends that this issue is not a political question, as she merely asks the

Court to "enforce a specific statutory right." *Zivotofsky*, 566 U.S. at 196.  Pl.'s Opp'n at 13.  In

*Zivotofsky*, for instance, Congress instructed the Secretary of State to list "Israel" as the place of

birth on documents issued to United States citizens born in the city of Jerusalem.  *Id.* at 191.  The

Department of State's continued listing of "Jerusalem" on those documents drew a lawsuit.  *Id.*

at 191–92.  The district court found that it lacked jurisdiction because the issue required the court

to decide the political status of Jerusalem, and the D.C. Circuit affirmed.  *See id.* at 191–94.  The

Supreme Court reversed, holding that the case did not implicate the political question doctrine

because the judiciary was called upon to determine whether the statute unconstitutionally

intruded upon the President's constitutional powers, and not Jerusalem's status.  *See id.* at 194–

97.  "This," the Supreme Court observed, "is a familiar judicial exercise." *Id.* at 196.  Here, the

parties do not debate the meaning of the relevant statute, *see id.* at 196, nor its validity under the

Constitution.  Rather, the core question—whether the President's designation of certain

individuals with a degree of connection to the Burmese military responds to a declared national

emergency with respect to Burma—strays from the legal domain and into the effectiveness of the

President's policy decision and its relation to foreign policy objectives.  Determining whether

designation of adult children addresses the national emergency with respect to Burma is

"delicate, complex, and involve[s] large elements of prophecy" that this Court is not empowered to evaluate.[3]  *Bancoult*, 445 F.3d at 433.

Theint Win Htet additionally cites cases in which courts have entertained challenges to individuals' designations under various sanctions regimes.  *See* Pl.'s Opp'n at 12–13.  Yet the plaintiffs in those cases challenged not the President's decision to select certain fine-tuned designation criteria in an executive order, but rather OFAC's application of those directions to facts under principles of administrative law.  In *Deripaska v. Yellen*, No. 19-cv-00727, 2021 WL 2417425 (D.D.C. June 13, 2021), the plaintiff argued that OFAC did not designate him under any existing executive order declaring a national emergency, and that the agency lacked a factual basis to designate him.  *Id.* at *5–10.  The Court determined that OFAC acted under two specific executive orders, *see id.* at *6, and that the facts supported his designation under the President's criteria, *see, e.g.*, *id.* at *6–7.  The court in *Olenga v. Gacki*, 507 F. Supp. 3d 260 (D.D.C. 2020), also considered whether OFAC acted arbitrarily and capriciously by re-designating the plaintiff.  *See id.* at 279.  The court considered the record and upheld the agency's action.  *See id.* at 280.  Determining whether the record supports an agency's application of specific criteria to an individual "is a familiar judicial exercise," *Zivotofsky*, 566 U.S. at 196, that does not resemble the President's policy-laden selection of classes of individuals to designate under IEEPA in response to the national emergency with respect to Burma.  Indeed, the Court would be unlikely

---

[3] This does not necessarily mean that the President's compliance with 50 U.S.C. § 1701(b) is *never* subject to judicial review, as Defendants appear to argue.  *See* Defs.' Mot. Dismiss at 16–18.  That provision deliberately places at least some boundaries on the President's use of Section 1702 powers, so it is not clear that IEEPA fully "commits the decision to the discretion of the President."  Defs.' Mot. Dismiss at 16 (quoting *Dalton v. Specter*, 511 U.S. 462, 474 (1994)).  It is conceivable that a different set of facts—and a plaintiff asking a court to deal with a different issue—would not raise a political question.  *See Gonzalez-Vera v. Kissinger*, 449 F.3d 1260, 1264 (D.C. Cir. 2006) (observing that the political question doctrine may not apply to a more extreme fact pattern).

to find a political question if Theint Win Htet argued that she does not meet the designation

criteria found in E.O. 14014 because she is not Thein Win Zaw's adult daughter. *See, e.g.*,

*Hourani v. Mirtchev*, 796 F.3d 1, 8 (D.C. Cir. 2015) (explaining that political question doctrine

did not apply when court was asked to apply RICO statute to specific facts).  The question here

does not revolve around application of the criteria to Theint Win Htet, but rather the

effectiveness of the President's policy decision in relation to foreign policy objectives.

The second *Baker* factor also applies when there is "a lack of judicially discoverable and

manageable standards for resolving" the question before the court.  *Baker*, 369 U.S. at 217.  This

consideration is "not completely separate" from the first *Baker* factor, as "the lack of judicially

manageable standards may strengthen the conclusion that there is a textually demonstrable

commitment to a coordinate branch."  *Nixon v. United States*, 506 U.S. 224, 228–29 (1993).  The

judiciary "must decline to reconsider what are essentially policy choices because '[t]he Judiciary

is particularly ill suited to make such decisions, as courts are fundamentally underequipped to

formulate national policies or develop standards for matters not legal in nature.'"  *El-Shifa*, 607

F.3d at 844 (quoting *Japan Whaling*, 478 U.S. at 230).  In other contexts, the Supreme Court has

stated that the legal standards for resolving politically intensive claims "must be grounded in a

'limited and precise rationale' and be 'clear, manageable, and politically neutral.'"  *Rucho v.*

*Common Cause*, 588 U.S. 684, 703 (2019).

Theint Win Htet does not carry her burden to show that there exist judicially manageable

standards to resolve the question she places before the Court.  *See Bagherian*, 442 F. Supp. 3d at

91 (explaining that the plaintiff "bears the burden of establishing jurisdiction").  Again, the cases

she cites involve APA challenges to OFAC's application of designation criteria to the facts of

individual cases, not the President's determination that designation of classes of individuals deals

13

with a threat with respect to which a national emergency has been declared.  *See* Pl.'s Opp'n at

12–13.  The Court itself identifies no "limited and precise rationale," *Rucho*, 588 U.S. at 703, by

which it might determine whether designation of adult children of individuals sanctioned for ties

to Burma's military "deal[s] with" the national emergency with respect to democratic

governance and civil liberties in that country, 50 U.S.C. § 1701(b).  This endeavor might require

the Court to consider, for instance, affidavits and reports from experts in sanctions, politics, and

current events in Burma.  The Court would then need to opine on whether the President's action

effectively counters the threat to democracy and political rights in Burma.  This inquiry would

not be legal in nature, and there are no judicial standards with which to resolve it.  Because both

the first and second *Baker* factors are present here, the Court finds that this case implicates a

nonjusticiable political question.  *See Gonzalez-Vera v. Kissinger*, 449 F.3d 1260, 1263 (D.C.

Cir. 2006) ("[I]f either" the first or second *Baker* factor "obtains, the courts are without

jurisdiction to proceed."); *Ralls Corp.*, 758 F.3d at 313 ("[T]he Court need only conclude that

one factor is present, not all.").

It is clear that this political question "is inextricable from the case at bar."  *Baker*, 369

U.S. at 217.  Indeed, it represents the core challenge levied in Counts One and Two of the

Complaint, and Theint Win Htet cannot prevail unless the Court rules in her favor on the issue.

The case thus cannot "be resolved without considering any political question."  *Al-Tamimi*, 916

F.3d at 8; *see also Gonzalez-Vera*, 449 F.3d at 1264 (dismissing case because "the plaintiffs were

unable to extricate their [Torture Victim Protection Act] claims from the political question that

permeates their complaint").

Finally, the political question here prevents adjudication of Theint Win Htet's APA claim

against OFAC, as well.  Count Two of the Complaint alleges that OFAC acted unlawfully

because its "designation action does not address the actions of the Burmese military including the military coup on February 1, 2021." Compl. ¶ 54. In addition, Theint Win Htet claims that "OFAC's designation of Plaintiff under E.O. 14014 Section 1(a)(v) has no discernible connection to addressing the threat for which the national emergency identified in the Preamble of that Order, and is thus outside of the President's authorities Congress granted to him under IEEPA." Compl. ¶ 55. These assertions rest on the same grounds as Count One, and the Court thus lacks the power to adjudicate them.

For the foregoing reasons, the Court determines that Counts One and Two of the Complaint raise nonjusticiable, inextricable political questions. The Court thus grants Defendants' motion to dismiss as to those counts.[4]

## B. Due Process

Theint Win Htet alleges that OFAC failed to provide her with procedural protections in violation of the Fifth Amendment Due Process Clause. *See* Compl. ¶¶ 56–60. "As Plaintiff is solely designated for being an adult child of a person blocked under E.O. 14014, she has no opportunity to establish that the designation was insufficient, that the circumstances have changed, or to propose remedial measures to negate the basis of the designation." Compl. ¶ 59. She has "no meaningful opportunity to seek rescission" and "no avenue to seek relief." *Id.* Defendants move to dismiss on the basis that Theint Win Htet fails to state a claim for a due process violation and failed to exhaust her administrative remedies. *See* Defs.' Mot. Dismiss at 22–28. The Court agrees that Theint Win Htet fails to state a due process claim.

---

[4] Because the Court rests its conclusion on the existence of a political question, it does not reach Defendants' argument that the requested relief is improper. *See* Defs.' Mot. Dismiss at 28–29.

Procedural due process protections exist not for their own sake, but rather to provide sufficient inquiry to ensure that the facts support application of a generalized provision of law to a particular individual or entity. Procedural due process concerns therefore do not arise when a legislature passes a generally applicable law regarding, for example, the imposition of taxes. *See generally Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441 (1915). Due process is implicated, however, when authorities make factual assessments in applying that generally applicable law to an individual. *See, e.g.*, *Londoner v. City & Cnty. of Denver*, 210 U.S. 373, 385–86 (1908). It follows that process is warranted only when there is a factual issue to settle. In *Codd v. Velger*, for instance, the Supreme Court considered whether a police officer was entitled to further process for his dismissal based on a previous suicide attempt using his service revolver. 429 U.S. 624, 625 (1977). The Court observed that the plaintiff nowhere "asserted that the report of the apparent suicide attempt was substantially false." *Id.* at 627. "[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose," the Court reasoned, "there must be some factual dispute" to resolve. *Id.*

Just like the plaintiff in *Codd v. Velger*, Theint Win Htet raises no factual dispute for OFAC or the Court to resolve. Section 1(a)(v) applies to adult children of individuals designated under E.O. 14014, and Theint Win Htet concedes that "she will always be the adult child of Thein Win Zaw, who himself can remain designated in perpetuity." Compl. ¶ 33. Theint Win Htet argues that she need not exhaust her administrative remedies because the agency will inevitably deny her request for reconsideration. This is so because "she cannot show that she is not the adult child of Thein Win Zaw, she cannot change the circumstances that led to the basis of this designation, nor can she propose remedial steps that would negate the basis for this designation." Pl.'s Opp'n at 30. But the reason she believes exhaustion is futile is the same

reason why no further process is due in the first place: she concedes the factual basis on which

OFAC applied the President's designation criteria to her.  Any hearing on the issue would thus

fail "to serve any useful purpose."  *Codd*, 429 U.S. at 627.  Because Theint Win Htet fails to

allege a due process violation, the Court grants Defendants' motion to dismiss as to Count

Three.[5]

## C.  Rule 7(n)

Finally, Defendants move for relief from the local civil rule requiring an agency to "file a

certified list of the contents of the administrative record with the Court . . . simultaneously with

the filing of a dispositive motion."  Defs.' Mot. for Relief from Local Civ. R. 7(n) ¶ 1 (quoting

Local Civ. R. 7(n)).  Defendants assert that their motion to dismiss does not rely on the

administrative record, and that the rule should not apply here.  *See id.* ¶ 3.  Theint Win Htet

opposes this motion, arguing that the administrative record is necessary for the Court to rule on

the exhaustion and due process claims that the parties have briefed.  *See* Pl.'s Opp'n Mot. for

Relief from Local Civ. R. 7(n) at 2, ECF No. 7.  As the above analysis demonstrates, the Court is

capable of resolving the motion to dismiss based on the allegations in the Complaint.  "[T]he

Court concludes that the administrative record is unnecessary to decide the threshold legal

questions presented by the pending motion to dismiss," *Janay v. Blinken*, No. 23-cv-3737, 2024

WL 3432379, at *3 (D.D.C. July 16, 2024), and therefore grants Defendants' motion for relief

from Local Civil Rule 7(n).

---

[5] Because the Court holds that there is no due process violation, it does not reach
Defendants' argument that Theint Win Htet failed to exhaust her administrative remedies.  *See*
Defs.' Mot. Dismiss at 23–24.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss and Motion for Relief from Local Civil Rule 7(n) are **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 18, 2025                                              RUDOLPH CONTRERAS
                                                                       United States District Judge